# REPORTS OF CASES ADJUDGED

IN THE

# SUPREME COURT OF PORTO RICO

THE PEOPLE *v.* MARTÍNEZ.

APPEAL from the District Court of San Juan.

No. 288.—Decided January 9, 1911.

PENAL LAW—ASSAULT WITH INTENT TO COMMIT MAYHEM—CRIMINAL INTENT—
NATURAL CONSEQUENCES OF AN ACT.—The person executing an act must·be
held to intend the·natural and probable consequences thereof, and it is to
be presumed that every normal adult, endowed with normal sense, knows the
terrible pain that fire produces when applied to the human body.

ID.—ADEQUATE PUNISHMENT OF A CRIME.—The defendant urges that the penalty
of nine years in the penitentiary to which he has been sentenced is exces-
sive. On appeal the court held that said penalty was not excessive, and in
imposing the same the trial judge had committed no abuse of discretion, since
under the law he could impose upon defendant the maximum penalty of
14 years of imprisonment in the penitentiary, considering the cruelty of the
act executed by the defendant.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

Francisco Martínez was convicted in the District Court
of San Juan of the crime of assault with intent to commit
mayhem, he having assaulted Nicolás Correa, causing him
several burns on the feet. · Section 222 of Penal Code defines
the crime as follows:

"Section 222. Every person who assaults another with intent to
commit rape, the infamous crime against nature, mayhem, robbery,
or grand larceny, is punishable by imprisonment in the penitentiary
for not less than one nor more than fourteen years."

The only error charged is that the evidence failed to show
a criminal intent, but it is also urged that the sentence of
nine years is excessive.

1

The facts are substantially undisputed. Nicolás Correa is a small boy and his mother is dead. Before her death she had left him on one occasion with the defendant for two months, and on her death had requested him to take the child. The defendant did so and took care of the child, fed and clothed him. The amount of these attentions is not disclosed by the evidence, and there is no proof of any affectionate relation between them. One of the witnesses gave evidence tending to show that the child was frequently beaten and punished for running away. The defendant made it a duty of Nicolás to bring him his lunch at noon, and the child frequently failed to do so. It was apparently suggested to the defendant, so he testifies, that a good way to keep the child from running away would be to apply a burning paper to his legs or his feet.

One day, toward the end of May, 1910, on a morning after the boy had been brought back by an uncle at 1 o'clock a. m., the defendant was about to inflict a punishment on him, but the wife of the defendant had a piece of paper in her hands and the defendant, burning it, applied it to the feet of the boy and kept it there apparently, according to one witness, for a long time.

The child fled like a wounded animal to the grass. The physician who examined him found that he had no skin on his feet and that there were boils and other disfigurations, and that the child could not put his feet on the ground. The physician also testified that the skin would grow and the child would be able to walk again. His testimony was being given on July. 15, 1910. There was evidence of the physician and others tending to show that the swelling and the other injury was not alone caused by the burning, but partially by the exposure and the poor aid first given the child. The physician also said that he ascribed the length of time that the boy had been ill to the infection produced by the manner of his attempted curing. The boy was produced in court and his wounded feet shown to the judge.

The defendant protested that he only meant to inflict a punishment on the boy to keep him from running away and make a workman of him, not wanting him to roam about the streets lest a trolley strike him or something else happen to him. The witnesses of the Government are mild in their statements of what they saw, but it is evident from the testimony of the policeman who investigated the crime that the occurrence shocked the community and the event was bruited in the streets.

At the argument no attempt was made to show any error at the trial, and it is only in the brief of counsel that it is urged that no criminal intent was shown. Any one who applies fire to the body of another, in the same way as one who uses a deadly weapon against another, must be held to intend the natural and probable consequences of his act.

Counsel, however, urges that the penalty is excessive; that the defendant, even though he acted criminally, had no malice toward the boy, as evidenced by the fact that the mother of Nicolás confided him to the defendant and that the latter was attending to his support. But if one is looking for a motive of anger it can be found in the failure of the boy to bring defendant his lunch. There is no normal person, and certainly no normal adult, who does not know the terrible pain that fire produces. If a legislature should punish a crime like this by a similar burning of the feet it would be held to be unconstitutional in every part of the United States as a cruel and unusual punishment.

There are different theories of the object of punishment, some writers insisting that the deterrent effect of a penalty is one of its main objects, but they all agree that punishment is educational and reformatory in its nature and that it should be certain and adequate. When a crime is punished swiftly and adequately, and not excessively, while it may not deter the malignant mind it serves to impress upon the consciousness a sanction against the commission of like offenses. In the case before us the judge had a discretion to

punish the defendant by imprisonment in the penitentiary not to exceed 14 years. The defendant was committing an unusually cruel act against a helpless and dependent child. We see no abuse of discretion in the action of the trial court and no reason to modify the judgment, which must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.